IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(Kansas City Docket)

FILED IN OPEN COURT
8/31/2020
TIMOTHY M. O'BRIEN, CLERK
BY _____ DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br><br>CHUNQUI WU<br>a/k/a Kelly<br><br>Defendant. | Case No. 19-20078-JAR |

## PLEA AGREEMENT

The United States of America, by and through Assistant United States Attorney, Kim I. Flannigan, and Chunqui Wu, a/k/a, Kelly, the defendant, personally and by and through her counsel, Carl Cornwell, hereby enter into the following Plea Agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure:

1. **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 1 of the Indictment charging a violation of 18 U.S.C. § 2421(a), that is, attempted transportation for purposes of prostitution. By entering into this Plea Agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count 1 of the Indictment to which she has agreed to plead guilty is not more than 10 years of imprisonment, a $ 250,000 fine, not less than 5 years nor more than a life term of supervised release, restitution as determined by the court, and a $100.00 mandatory special assessment

2. **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

In October of 2018, the Olathe Police Department (Olathe PD) performed a compliance check at Alpha Massage (Alpha), previously known as Relaxation Station, located at 116 S. Clairborne, #A in Olathe, Kansas, to ensure the business was abiding by mandatory licensure requirements. Following this check, the Olathe PD began investigating Alpha and other related Asian massage parlors. Their investigation lead to the identification of **Chunqiu Wu**, aka Kelly, as being the owner and/or operator of multiple Asian massage parlors, to include: Alpha, A Plus Massage (A Plus), formerly known as Magical Massage, located at 527 N. Mur-Len Rd. in Olathe, Kansas 66062; and King Spa, located at 13014 State Line Rd., Leawood, Kansas. Through title documents Olathe PD also confirmed that **Wu** owns two houses. Surveillance, massage license applications, and communications between **Wu** and a Confidential Human Source (Source) confirmed that, therapists from Alpha, A Plus, and King Spa, reside at one of the houses owned by **Wu**. Surveillance conducted of **Wu**, the massage parlors, and the residences, revealed **Wu** was transporting therapists back and forth between the residences and parlors.

Patrons of Asian massage parlors use websites such as Eccie.net and Rubmaps.ch to write reviews of their experiences at various parlors. These reviews may include descriptions of the sexual services provided, prices, caliber of massage, and general observations about patrons' experience. A search on Rubmaps showed 54 reviews for Relaxation Station, located at 116 S. Clairborne, #A in Olathe, Kansas, the same address as Alpha, which has been known as Alpha, since at least 2017; 30 reviews for Magical Massage, located at 527 N. Mur-Len Rd., #A, Olathe, Kansas 66062, the same address as A Plus, which has been known as A Plus since at least 2016; and six reviews for King Spa, located at 13014 State Line Rd., Leawood, Kansas 66209. Eccie.net had a review of Magical Massage (A Plus), as recently as October 8, 2019, and discussed the patron's experience receiving manual stimulation of his penis, and being allowed to grope/fondle the therapist. Other reviews from 2019, for all three parlors discussed similar experiences in which patrons received sexual favors in exchange for additional tips. The establishment owner license for A Plus, listed **Wu** as the owner from 2016 to 2018, and her fiancé assumed ownership in 2019. From at least 2017, **Wu** paid rent and utilities for King Spa and Alpha. **Wu told** the confidential source that she, had three parlors in total, and then specifically named King Spa, Alpha, and A Plus, as parlors owned or run by **Wu**.

On August 21, 2019, the Source, who was someone with knowledge and understanding of the illicit massage parlor industry, contacted **Wu**, and inquired about the possibility of employment at one of **Wu's** parlors. The Source told **Wu** she had a friend, whose friend used to work for **Wu**, and recommended the Source reach out to **Wu** for employment. All phone conversations and text messages between the Source and **Wu**, were recorded, and translated. During their first conversation, after the introduction, Wu stated. "I can't tell you my thoughts over the phone, but if she (meaning the friend of the Source) has worked here before, then she should know how we work here."

In subsequent calls between September 5, 2019, and September 13, 2019, the Source advised **Wu** that she worked in California, where she and other therapists "do all kinds of work: hand jobs, add-on services… We do it all." **Wu** refused to discuss specifics over the telephone, but simply advised the Source that the add-on services could not be "over the top," or "too excessive." The Source interpreted this to mean **Wu** did not allow the therapists to engage in sexual intercourse. **Wu** explained that she could not talk over the phone because she would be liable for what the therapists do, because she is the boss. She reiterated that the only thing she would say was, the work cannot be too excessive. **Wu** clarified they have massage rules, and the additional services could not be too obvious, and that 85% of her customers are returning customers. During the recorded calls, the Source and **Wu** discussed other aspects of **Wu's** parlors and work there to include advertising, the quality of the massages, the number of potential customers, and how much money the Source could make as a massage therapist and a co-owner. Some of these conversations referenced online parlor reviews. **Wu** first mentioned online reviews, saying "I look at the reviews, and if they're really, really bad, or if less than half are good, I'll be concerned. I am concerned when the tips are too high. Generally, the clients I have here know the rules and give tips accordingly."

Also during the course of their conversations, **Wu** proposed that for $20,000 the Source could partner with **Wu** in running one of her parlors and in the interim agreed to provide the Source a job at her parlor located in Leawood. **Wu** also informed the Source that she would provide housing to the Source for $10 per day. **Wu** agreed to pick up the Source from the airport and advised the Source that she always picks up all her employees from the airport. The Source sent **Wu** her flight information from LAX to MCI, and again confirmed that **Wu** would pick up the Source at the airport in Kansas City, Missouri, and transport her to Kansas where **Wu** would provide lodging and employment at her parlor.

Olathe PD and the Leawood Police Department (Leawood PD) also performed undercover operations at **Wu's** massage parlors. On August 21, 2019, an undercover Olathe PD officer (Olathe UC) visited Alpha and requested a half hour massage. During the massage the therapist asked if Olathe UC wanted her to massage his penis. After UC#1 said yes, she began the requested massage, and said it would cost $40. Olathe UC said he did not have enough cash, stopped the therapist, and left. While in Alpha, the Olathe UC recognized the therapist and another employee from a previous compliance check he performed at A Plus. On March 19, 2019, a second undercover Leawood PD officer (Leawood UC#2) visited King Spa and requested an hour massage. During the massage, the therapist exposed and touched Leawood UC#2's genitals multiple times and massaged his pubic area.

It was common for therapists at one of **Wu's** establishments to also work at her other parlors. A review of the license applications for therapists working at Alpha, A Plus, and King Spa, showed that according to license applications, six therapists listed **Wu** as assisting them with their applications for Alpha, and A Plus, for a total of twelve applications. Seven therapists, in seven applications, listed **Wu** as the owner of A Plus, three therapists, in three applications, listed **Wu** as their supervisor at Alpha, and two therapists in four applications listed one of **Wu's** houses as their home address. All three parlors list **Wu** as the point of contact. The FBI, Olathe PD, and Leawood PD performed surveillance of Alpha, A Plus, and King Spa. The therapists would often get dropped off and picked up from the parlors by other Asian females. **Wu** was also

observed at the various parlors during these surveillance activities, and according to tracker information on **Wu's** vehicle, she would spend as much as two to three hours at a given parlor. Additionally, during the second Leawood undercover operation, the Leawood UC#2 observed that a patron had written "Donald Duck" as his name in the login book. Inaccurate logbooks, and books containing fictitious names are further indications of illegal activity within the parlors.

On November 14, 2019, at approximately 9:36 am, the Source sent a text message to **Wu** telling **Wu** what time the Source's United Airlines flight would be arriving at the Kansas City International (KCI) Airport. The Source told **Wu** she would be arriving at United gates 61-69. At approximately 9:40 am, **Wu**, accompanied by her fiancé, arrived at KCI terminal C, and parked just down from United gates 61-69. She was approached and arrested.

3. **Application of the Sentencing Guidelines.** The parties request that the Court apply the United States Sentencing Guidelines (Guidelines) to calculate the applicable sentence and impose a sentence consistent with the Guidelines. The defendant agrees to waive all constitutional challenges to the validity of the Guidelines. The defendant understands and acknowledges that the Court will find, by a preponderance of the evidence, the facts used to determine the offense level, and in making its findings, that the Court may consider any reliable evidence, including hearsay. Nothing in this section prevents the parties from filing objections to the Presentence Report prepared by the United States Probation Office, or from arguing the application of specific sections of the Guidelines. The parties agree that the Court will determine the final Guideline range. The parties understand this Plea Agreement binds the parties only and does not bind the Court.

4. **Relevant Conduct.** The parties have agreed to the application of the Guidelines. Therefore, the defendant agrees that the conduct charged in any dismissed counts, as well as all other uncharged related criminal activity, will be considered as relevant conduct for purposes of calculating the offense level for the count(s) of conviction, in accordance with United States Sentencing Guidelines (U.S.S.G.) § 1B1.3.

5. **Government's Agreements.** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas agrees:

   (a) to recommend a sentence at the low end of the sentencing guideline range;

   (b) not to oppose a sentence of home confinement if such a sentence is available to the defendant;

   (c) to recommend the defendant receive a two (2) level reduction in the applicable offense level under U.S.S.G. § 3E1.1 for acceptance of responsibility. In addition, if her offense level is 16 or greater, prior to any reduction for acceptance of responsibility, and the Court finds she qualifies for a two-level reduction, the United States will move at the time of sentencing for an additional one-level reduction for acceptance of responsibility because she timely notified the government of her intention to enter a plea of guilty;

   (c) not to file any additional charges against the defendant arising out of the facts forming the basis for the present Indictment.

The United States' obligations under this Paragraph are contingent upon the defendant's continuing to manifest an acceptance of responsibility. If the defendant denies or gives conflicting statements as to her involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if she has breached this Plea Agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this Plea Agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this Plea Agreement's terms, the United States shall not be bound by this Paragraph, and may pursue any additional charges

arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this Plea Agreement, she understands and agrees that all statements she made, any testimony she gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against her in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements she made subsequent to this Plea Agreement.

6. **Sentence to be Determined by the Court.** The defendant understands that the sentence to be imposed will be determined solely by the United States District Judge. The United States cannot and has not made any promise or representation as to what sentence she will receive.

7. **Identification of Assets and Agreement Concerning Monetary Penalties (Restitution, Fines, Assessments) and Forfeiture.** The defendant agrees to cooperate fully with the United States Attorney's Office and specifically agrees as follows:

   (a) Defendant agrees to execute a financial statement provided by the United States Attorney's Office and to update the statement with any material changes within 30 days of any such change. Defendant further agrees to provide all supporting documentation, including, but not limited, to copies of federal tax returns. The defendant agrees to disclose all assets in which defendant has any interest or which defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, as well as any transfer of assets that has taken place within six years preceding the entry of the judgment in this criminal case. Additionally, the defendant agrees to periodically execute an updated financial statement at the request of the United States Attorney's Office until such time the judgment debt is paid in full.

   (b) Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information. Defendant agrees the United States Attorney's

6

    Office may subpoena any records it deems relevant to conduct a full financial investigation. Defendant agrees to discuss or answer any questions by the United States relating to its financial investigation.

(c)   Defendant agrees to submit to an examination prior to and/or after sentencing, which may be taken under oath, and/or may include a polygraph examination.

(d)   Defendant agrees that any waivers, consents, or releases executed for the United States Probation Office for purposes of preparation of the Presentence Report may be provided to the United States Attorney's Office. All information defendant provided to the United States Probation Office or independently obtained by the United States Probation Office may be provided to the United States Attorney's Office.

(e)   Defendant agrees not to encumber, transfer, or dispose of any monies, property, or assets under defendant's custody or control, without written approval from the United States Attorney's Office.

(f)   Defendant agrees that whatever monetary penalties the Court imposes (including any fine, restitution, assessment, or forfeiture judgment), will be due and payable immediately and subject to immediate enforcement by the United States. Should the Court impose a schedule of payments, she agrees that the schedule of payments is a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If defendant is incarcerated, defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

(g)   If defendant posted funds as security for defendant's appearance in this case, defendant authorizes the Court to release the funds to the Clerk of the United States District Court to be applied to the criminal monetary impositions at the time of sentencing.

(h)   Defendant waives any requirement for demand of payment on any restitution, fine, assessment, or forfeiture judgment entered by this Court.

(i)   Defendant agrees to notify the United States Attorney's Office within 30 days of any change of address or other contact information until the judgment debt is paid in full.

(j)   Defendant agrees the terms of this agreement shall be incorporated into the Judgment in a Criminal Case.

(k)   Defendant waives the administrative requirements of the Treasury Offset Program, including the requirement of default, and agrees to be immediately included in the

7

Treasury Offset Program allowing federal benefits and payments to be offset and applied to the balance of criminal monetary penalties.

(l) Defendant agrees that noncompliance with any of the terms set forth in this paragraph will result in a continuance of the sentencing hearing.

8. **Restitution.** The defendant knowingly and voluntarily agrees and consents to pay restitution if so ordered by the court.

9. **Withdrawal of Plea Not Permitted.** The defendant understands that if the Court accepts this Plea Agreement, but imposes a sentence with which she does not agree, she will not be permitted to withdraw her guilty plea.

10. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against her at the time of sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during her period of incarceration.

11. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, her conviction, or the components of the sentence to be imposed herein, including the length and conditions of supervised release, as well as any sentence imposed upon a revocation of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords her the right to appeal the conviction and sentence imposed. The defendant also waives any right to challenge her sentence, or the manner in which it was determined, or otherwise attempt to modify or change her

sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court departs upwards from the sentencing Guideline range that the Court determines to be applicable. However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

12. **FOIA and Privacy Act Waiver.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

13. **Full Disclosure by United States.** The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case. This may include information concerning her background, character, and conduct, including the entirety of her criminal activities. The defendant understands these disclosures are not limited to the count to which she is pleading guilty. The United States may respond to comments she or her attorney makes, or to positions she or her attorney takes, and to correct any misstatements or inaccuracies. The United States further reserves

its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this Plea Agreement. The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

14. **Deportation Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which she is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including her attorney or the Court, can predict to a certainty the effect of her conviction on her immigration status. Defendant nevertheless affirms that she wants to plead guilty, regardless of any immigration consequences that her plea may entail, even if the consequence is her automatic removal from the United States.

15. **Megan's Law/Adam Walsh Act Notice.** The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the defendant's school. Registration will require that the defendant provide information that includes name, residence address, and the names and addresses of any places at which the defendant is or will be an employee or a student. The defendant understands that she must update her registrations not later than three business days after any change of name, residence, employment, or student status. The defendant understands that failure

10

to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine or imprisonment, or both.

16. **Parties to the Agreement.** The defendant understands this Plea Agreement binds only her and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

17. **Voluntariness of Guilty Plea.** The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with her attorney and she is fully satisfied with the advice and representation her attorney provided. Further, the defendant acknowledges that she has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that she is entering into this Plea Agreement and is pleading guilty because she is guilty. She further acknowledges that she is entering her guilty plea freely, voluntarily, and knowingly.

_____  Date: 8/25/2020
Kim I. Flannigan
Assistant United States Attorney
500 State Avenue Room 360
Kansas City, Kansas 66101
(913)551-6730
Sup.Ct. No. 13407

_____ #15643          Date: 8-20-20
Scott Rask
Assistant United States Attorney
Supervisor

_____                 Date: 8/31/20
Chunqui Wu
Defendant

_____                 Date: 8/31/20
Carl Cornwell
142 North Cherry Street
Olathe, Kansas 66061
Counsel for Defendant